IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DELLA FOLSOM, )
  )
          Plaintiff, )
  ) CIVIL ACTION
v. )
  ) No. 18-1044-JWL
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
  )
          Defendant. )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) finding fibromyalgia is not one of Plaintiff's medically determinable impairments, the court ORDERS that the Commissioner's final decision shall be reversed and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

**I.    Background**

Plaintiff argues the ALJ "erroneously concluded [Ms.] Folsom's fibromyalgia was not a medically determinable impairment." (Pl. Br. 11) (bolding and underline omitted).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issue as presented in Plaintiff's Brief.

## II.  Discussion

Plaintiff argues the ALJ erred in finding at step two of the sequential evaluation process that fibromyalgia is not a medically determinable impairment (MDI) in this case because, contrary to the ALJ's findings, the record demonstrates that all the requirements to establish the MDI of fibromyalgia are present in this case. She argues the ALJ's statement that "comprehensive findings establishing a diagnosis of fibromyalgia are not included in detail in this record" (R. 16) is an application of the incorrect legal standard because "there is no requirement in the regulations or SSR [(Social Sec. Ruling)] 12-2p that 'comprehensive findings' are required to establish fibromyalgia as a medically determinable impairment." (Pl. Br. 15-16). Plaintiff argues that the ALJ's error prejudiced her because limitations resulting from an alleged impairment which is not medically determinable are precluded from the ALJ's consideration when assessing RFC.

The Commissioner responds that the ALJ correctly found a lack of documented tender points which justified her finding fibromyalgia is not an MDI, and that finding justified her not assessing limitations allegedly resulting from fibromyalgia. She points out "that 'under no circumstances may the existence of an impairment be established on the basis of symptoms alone.'" (Comm'r Br. 5) (quoting SSR 96-4p, 1996 WL 374187, at *1). Based on SSR 12-2p she argues that to establish an MDI of fibromyalgia a

4

claimant must demonstrate she has at least eleven of eighteen positive tender points on examination, and that no physician documented "exactly how many tender points Plaintiff had or the locations of any such tender points." (Comm'r Br. 5-6). She argues that "the ALJ was correct in noting that no provider diagnosed fibromyalgia based on the requisite number of tender points." Id. at 7. Accordingly, she argued that "the ALJ reasonably found that the evidence was insufficient to establish that Plaintiff's fibromyalgia was a medically determinable impairment." Id. (citing SSR 12-2p, and 20 C.F.R. § 416.908). She argues that consequently the ALJ correctly declined to consider Plaintiff's alleged fibromyalgia in assessing RFC. Id. at 8.

In her Reply Brief, Plaintiff points out SSR 12-2p has two tests for determining if fibromyalgia is an MDI, and only one requires eleven positive tender points. (Reply 1). She argues that in any case the record shows her case meets the second test. Id. at 2.

## A. The ALJ's Findings

At step two of the sequential evaluation, the ALJ found that Plaintiff has severe impairments of "degenerative disc disease; trigeminal neuralgia; major depressive disorder; panic disorder with agoraphobia; posttraumatic stress disorder (PTSD); chronic fatigue; and obesity." (R. 14) (finding no. 2) (bolding omitted). She also found that Plaintiff has other MDIs which are not severe within the meaning of the Act and the regulations; including peripheral neuropathy, mild carpal tunnel syndrome, essential hypertension, sinus tachycardia, chronic headaches, and blood in the stool following antibiotics. Id. at 15. The ALJ noted numerous alleged conditions which she considered

5

and about which she discussed the record evidence, and found were not MDIs. (R. 15).

She then discussed fibromyalgia:

> Records of treatment also include fibromyalgia as a diagnosis in this case (See e.g., Exhs 23F/12; and 26F/2-3 and 36 [(R. 756, 817-18, 851)]). However, at least one rheumatologist states no rheumatological disorder could be identified (Exh 24F/19 [(R. 787)]); and although there is reference to tender points and symptoms supportive of the diagnosis, comprehensive findings establishing a diagnosis of fibromyalgia are not included in detail in this record.
>
> To summarize, relating to all the noted signs, symptoms and possible diagnoses, a medically determinable impairment may not be established solely based on symptoms alone, or on the claimant's allegations regarding symptomatology (20 CFR 416.908; and SSR 96-4p). An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. I find no clinical or objective medical evidence showing ongoing medically established impairments related to these allegations and hypothetical assessments aside from those severe and nonsevere conditions previously noted in this decision.

Id. (citing SSR 12-2p). It is clear the ALJ found Plaintiff's allegations of fibromyalgia are not medically determinable in the circumstances of this case.

### B.  Applicable Legal Standard

An impairment is not considered severe if it does not significantly limit a claimant's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th

6

Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d 748, 751 (10th Cir. 1988). However, she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on the claimant's ability to do basic work activities, it could not prevent her from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352. The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that she had an impairment and how severe it was during the time the claimant alleges she was disabled. 20 C.F.R. § 416.912(c).

The Commissioner has provided "guidance on how [the Social Security Administration (SSA)] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia." Social Security Ruling, SSR 12-2p; Titles II and XVI: Evaluation of Fibromyalgia, 77 Fed. Reg. 43,640-01, 2012 WL 3017612 (July 25, 2012). SSR 12-2p provides that

> Generally, a person can establish that he or she has an MDI of FM [(fibromyalgia)] by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and

establish the physician's assessment over time of the person's physical strength and functional abilities.

Id., 77 Fed. Reg. at 43,641

The ruling provides two sets of specific evidence, either of which might establish the MDI of FM acceptable to the SSA so long as "the physician's diagnosis is not inconsistent with the other evidence in the person's case record." Id. Both sets of criteria require (1) a history of widespread pain in all quadrants of the body that persisted for three months, which may fluctuate in intensity and may not always be present, and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded" in reaching the diagnosis or FM. Id.

The first set of evidence requires as criterion #2, "[a]t least 11 positive tender points on physical examination" out of 18 specifically identified tender point sites "located on each side of the body." Id., 77 Fed. Reg. at 43,641-42. The SSR also explains the means of testing the tender point sites. Id., at 43,641.

The second set of evidence differs by requiring at criterion #2: "Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." Id., at 43,642. In three footnotes, the SSR fleshes out its requirements of these "symptoms, signs, or co-occurring conditions," and explains that "'[w]aking unrefreshed' may be indicated in the case record by the person's statements describing a history of non-restorative sleep." Id., nn.9-11. In addition to the special manifestations specifically listed in the text of

8

criterion #2 of the second set of evidence, the footnotes list "somatic symptoms" of "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms," id., 77 Fed. Reg. at 43,642 n.9, and "co-occurring conditions" of "anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome." Id., at n.10.

### C. Analysis

Plaintiff argues that all three criteria of both sets of evidence are met, the Commission does not argue that the first and third criteria are not met, and the court finds that there is record evidence from which it might be inferred those criteria are met. Therefore, the question for the court is whether the record evidence supports the ALJ's apparent finding that the second criterion of neither set of evidence is met. It does not.

As quoted above, the ALJ found that "although there is reference to tender points and symptoms supportive of the diagnosis, comprehensive findings establishing a diagnosis of fibromyalgia are not included in detail in this record." (R. 15). Plaintiff argues that there is no statute, regulation, or ruling which requires "comprehensive

9

findings establishing a diagnosis of fibromyalgia." However, the ALJ's finding can be understood to constitute a finding both that the evidence does not show 11 positive tender points, and that the evidence does not show "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions." While the record evidence does contain bare "diagnoses" of fibromyalgia, Plaintiff points only to "physical examinations that yielded 'a lot' and a 'good majority' of the fibromyalgia tender points," and does not point to record evidence of an examination establishing 11 or more positive tender points. (Reply 1) (citing Comm'r Br. 6, which quoted R. 669-70, and R. 817-18). The ALJ found Plaintiff has not shown evidence of fibromyalgia in accordance with the first set of criteria for establishing fibromyalgia as a MDI, and the record evidence supports that finding.

However, as to the second set of criteria, neither the decision nor the record is so clear. While the decision can be read to find that the evidence does not show "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions," the decision does not show how (or even if) the ALJ definitively reached that conclusion. Moreover, the decision itself suggests that Plaintiff might have had such symptoms, signs, or co-occurring conditions. For example, the ALJ found that Plaintiff has severe impairments of major depressive disorder, PTSD (an anxiety disorder), and chronic fatigue. (R. 14). These might be manifestations of depression, anxiety, and chronic fatigue syndrome—which can be FM symptoms, signs, or co-occurring conditions. The ALJ also noted "a number of tentative diagnoses raised in records of treatment that include numerous efforts to assess the origin of multiple symptoms reported by the

claimant, including, for example, extremity weakness and numbness, intermittent unsteady gait, chronic fatigue, diffuse pain, myalgias, headaches, short-term memory loss and facial pain and droop." (R. 15). Of these muscle weakness, numbness, myalgias, headaches, and memory problems can also be FM symptoms, signs, or co-occurring conditions. Finally, the ALJ noted that Plaintiff "kept a log of 'seizures'" (R. 15), which might also be a FM symptom, sign, or co-occurring condition. Since criterion #2 of the second set of evidence required for finding an MDI of FM requires "Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," these facts require specific discussion of whether the second set of evidence is met in this case. The court does not mean hereby to suggest that the evidence requires a finding that FM is an MDI in the facts and circumstance of this case, but that issue must be specifically addressed by more than a conclusory finding.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be reversed and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

Dated November 14, 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum  
**John W. Lungstrum**  
**United States District Judge**